IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JASMIN KAZEM HAMEED and ESLAM SABRY MOHAMED, | | |
| Plaintiffs, | | 1:25-CV-660-DAB |
| v. | | |
| CHRISTOPHER M. HEFFRON, Field Office Director, Charlotte Field Office, U.S. Citizenship and Immigration Services; JOSEPH B. EDLOW, Director U.S. Citizenship and Immigration Services; MARKWAYNE MULLIN, Secretary of U.S. Department of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States, in their official capacity, | | |
| Defendants. | | |

## <u>MEMORANDUM OPINION and ORDER</u>

Plaintiffs Jasmin Kazem Hameed and Eslam Sabry Mohamed ("Mohamed") (collectively "Plaintiffs") filed this action against the Director of the United States Citizenship and Immigration Services ("USCIS" or "the agency"), the USCIS Charlotte Field Office Director, the Secretary of the U.S. Department of Homeland Security,[1] and the Attorney General of the United States[2] in their official capacities,

---

[1] Markwayne Mullin became Secretary of Homeland Security on March 24, 2026, and is substituted for defendant Kristi Noem under Fed. R. Civ. P. 25(d)

[2] Todd Blanche became Acting Attorney General of the United States on April 2, 2026, and is substituted for defendant Pamela Bondi under Fed. R. Civ. P. 25(d).

seeking judicial review of USCIS's 2022 denial of Hameed's Form I-130 petition for Sam to be classified as her spouse under Section 201(b)(2)A)(i) of the Immigration and Nationality Act. *See Complaint*, D.E. 1.

Currently pending before the Court are the parties' cross-motions for summary judgment. *See Plaintiffs' Motion for Summary Judgment*, D.E. 16; *Defendants' Motion for Summary Judgment*, D.E. 18. The Matters have been fully briefed, and after a thorough review of the record and the applicable law, the Court finds that USCIS is entitled to summary judgment in its favor for the reasons set forth below.

## FACTUAL BACKGROUND

Eslam Sabry Mohamed entered the United States on April 20, 2015, as a nonimmigrant visitor with authorization to remain in the United States until October 19, 2015. *Certified Administrative Record*, D.E. 12–15 at 747 (hereafter "*CAR*"). On September 11, 2015, approximately a month before the end of his authorized stay, Mohamed married United States citizen Michele Holland ("Holland"). *Id.* at 761. On July 27, 2016, Holland submitted an alien relative petition (Form I-130) on Mohamed's behalf. *Id.* at 747–48. Mohamed and Holland were scheduled to be interviewed by a USCIS officer on December 27, 2016, but failed to appear and provided no explanation for such failure. *Id.* at 743–44. As a result, Holland's petition on Mohamed's behalf was denied for abandonment. *Id.*

After USCIS determined the petition was abandoned, the USCIS Officer referred the case to USCIS Fraud Detection and National Security ("FDNS"). *Id.* at 804. Thereafter, Immigration and Customs Enforcement ("ICE") Homeland Security Investigation ("HSI"), a separate component of the Department of Homeland Security ("DHS"), interviewed Holland. *Id.* at 808–10. During this interview, Holland stated that her employer was Mohamed's brother, Khaled. *Id.* She stated Khaled knew of her financial difficulties and told her that he may have a way to assist with her financial issues. *Id.* Khaled and Mohamed proposed that she be paid to marry Mohamed, with different financial sums paid to her at different stages of the immigration process. *Id.* at 808–09. She provided details of the money Mohamed provided, including how the payments were typically transmitted and when they stopped. *Id.* at 809. Holland stated that Mohamed received his "green card" a few months before the immigration interview scheduled in December 2016 and used that as identification to open a joint bank account at Wells Fargo bank in Wytheville, Virginia.[3] *Id.* at 810. The account agreement from First Community Bank shows

---

[3] Considering that Mohamed never received a green card, this may have been a layperson's description of a work permit. D.E. 12–15, at 330.

Holland's address on West Main Street, Wytheville, Virginia as of January 6, 2016. *Id.* at 520.

Mohamed, as well as various affidavits from Holland and others, state that they resided together at the West Main St. address until February 2016, when Holland relocated to Salem, Virginia. *Id.* at 56, 58, 59–74, 79, 186–95, 221–31, 522–24. On December 5, 2016, Mohamed was charged with Trespassing Private Property in violation of Virginia Code Section 18.2-119. *Id.* at 504. Mohamed states that this incident was in response to marital infidelity by Holland. *Id.* at 186–195. On April 19, 2017, Mohamed was found guilty and prohibited from contacting Holland. *Id.* at 504. Mohamed and Holland divorced in September 2017. *Id.* at 42. The divorce decree states that they had lived separate and apart since January 7, 2016, without reconciliation. *Id.* at 42.

On April 24, 2019, Mohamed married United States citizen Plaintiff Jasmin Kazem Hameed. *Id.* at 557. Hameed filed an alien relative petition on Mohamed's behalf on November 18, 2020. *Id.* at 532. On August 16, 2021, USCIS issued a Notice of Intent to Deny ("NOID") Hameed's petition, stating that there was substantial and probative evidence that Mohamed's earlier marriage to Holland was fraudulent, so the petition was barred from approval under INA § 204(c). *See* 8 U.S.C. § 1154(c); *CAR* at 528–31. Holland filed an affidavit recanting her statements to police and to HSI on October 4, 2021. *CAR* at 186–195. Plaintiffs also submitted a comprehensive response to the NOID, including affidavits from Holland and third parties, joint bank account records (which do not identify what financial institution they come from), joint residential lease agreements, utility bills and automobile records, medical records, court records, and texts messages between Mohamed and Holland. *Id.* at 280–527.

After considering the response to the NOID, USCIS denied the alien relative petition filed by Hameed on May 17, 2022. *Id.* at 129–134. USCIS found that the evidence demonstrated Mohamed's marriage to Holland was solely for immigration purposes. *Id.* Thereafter, Hameed appealed the decision to the Board of Immigration Appeals (BIA). On July 8, 2024, the BIA remanded the matter to USCIS for issuance of a new decision. *Id.* at 126–28. The remand directed USCIS to reassess and clarify the evidence on which it relied in rendering its decision, and consider any further evidence submitted upon remand. *Id.* at 128. BIA also noted that USCIS relied upon an alleged police report related to Mohamed's trespassing conviction that was not in the record. *Id.* Upon remand, USCIS issued a new NOID on February 24, 2025. *Id.* at 9–14. After considering the plaintiffs' response to the NOID, USCIS once again

denied the petition on June 11, 2025. *Id.* at 1–8. Plaintiffs challenge this denial here.[4] Plaintiffs did not appeal the June 11, 2025, denial to BIA, but Defendants do not raise any challenges based on failure to exhaust administrative remedies.[5]

## STANDARD OF REVIEW

The Administrative Procedure Act ("APA") confines judicial review of agency decisions to the administrative record of proceedings before the pertinent agency. *See* 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). Stated differently, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In reviewing an agency decision, courts should "not reweigh the evidence . . ., make credibility determinations, or substitute [their] judgment for that of the agency." *Downey v. U.S. Dep't of the Army*, 685 F. App'x 184, 189 (4th Cir. 2017) (citations omitted). The Court is only tasked with determining whether the evidence in the administrative record supports the conclusion. *Id.* at 190. As review is confined to the record, the entire case on review is a question of law, rather than of fact. *See Am. Bioscience, Inc.*, 269 F.3d at 1083; *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022).

The APA instructs federal courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review is "narrow and highly deferential." *Ren v. USCIS*, 60 F.4th 89, 93 (4th Cir. 2023) (internal quotations omitted). Courts will uphold an agency's decision "so long as we find that the agency 'acted within a zone of reasonableness.'" *Mestanek v. Jaddou*, 93 F.4th 164, 170 (4th Cir. 2024) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). "Even when an

---

[4] Plaintiffs also submitted two affidavits, *Plaintiff's Response*, D.E. 20, but the Court's review of this case is limited to the administrative record, which does not include these affidavits. *See Camp v. Pitts,* 411 U.S. 138, 142 (1973).

[5] Because "[c]ertain unfavorable decisions on applications, petitions, and other types of cases *may* be appealed" to the BIA, 8 C.F.R. § 103.3(a)(1)(ii) (emphasis added), some courts have held that such an appeal is optional but not required. *See, e.g., Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). However, the Second Circuit has ruled differently. *See Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995). Here, this Court need not reach that issue because even if administrative exhaustion were required, the Defendants waived this argument by failing to raise it in their Motion for Summary Judgment. *See Jones v. Bock*, 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense.").

agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

## DISCUSSION

In their cross-motions for summary judgment, the parties focus on one primary dispute: whether the USCIS's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiffs argue that the evidence relied upon by USCIS is contradictory or unsupported by the administrative record, and as a result the decision made by USCIS in reliance on that evidence was arbitrary and capricious. In response, Defendants move for summary judgment arguing that USCIS properly denied Plaintiffs' Form I-130 petitions because it identified "substantial and probative evidence" that Mohamed's prior marriage to Michele Holland was invalid. *Defendants' Memorandum*, D.E. 19, at 4. After a brief explanation of the Marriage Fraud Bar, the Court will address each of the parties' arguments.

### a. Legal Framework Governing I-130 Petitions and the "Marriage Fraud Bar"

A United States citizen seeking lawful permanent resident status for a noncitizen spouse must initiate the process by filing Form I-130, Petition for Alien Relative, with USCIS. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(I)(A)(i); 8 C.F.R. § 204.1(a)(1). The petitioner must furnish with that petition sufficient documentation that establishes, *inter alia*, "the claimed relationship of the petitioner [citizen] to the beneficiary [alien]." 8 C.F.R. § 204.1(f)(1). The petitioner bears the burden of proving eligibility, including both the validity of the marriage and "the legal termination of all previous marriages." 8 C.F.R. § 204.2(a)(2). However, if USCIS determines that the non-citizen beneficiary has previously "attempted or conspired to enter into a marriage for the purpose of evading the immigration laws," then it is prohibited from approving the petition. 8 U.S.C. § 1154(c)(2). This "marriage fraud bar" requires that USCIS must identify "substantial and probative evidence" of invalidity. *See* 8 C.F.R. § 204.2(a)(1)(ii); *Mestanek*, 93 F.4th at 172; *Matter of Singh*, 27 I&N Dec. 598 (BIA 2019); *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990).

In making a determination on Form I-130 and the "marriage fraud bar," USCIS "may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the" alien. *Tawfik*, 20 I&N Dec. at 168. "Circumstantial evidence alone may be sufficient to constitute 'substantial and

5

probative evidence.'" *Singh*, 27 I&N Dec. 598. Once USCIS identifies this evidence, the burden shifts to the petitioner to rebut the finding. *Matter of Kahy*, 19 I&N Dec. 803, 806–07 (BIA 1988). If USCIS denies the petition, the petitioner may take an administrative appeal of the decision to the BIA. *See* 8 C.F.R. § 1204.1.

### b. Parties Arguments

Plaintiffs' first argument is that USCIS never found fraud in its February 1, 2017, decision to deny Holland's Form I-130 petition on behalf of Mohamed. That decision was made exclusively on abandonment grounds after Mohamed and Holland did not appear for a scheduled interview. Plaintiffs appear to argue that USCIS could not arrive at a new decision in the wake of later discovered facts. *Plaintiffs' Memorandum*, D.E. 17, at 10. Plaintiffs offer no case law to support this proposition, and the Court is not aware of any. Indeed, USCIS "may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the" alien." *Tawfik*, 20 I&N Dec. at 168. This does not limit USCIS to the evidence available to it at the time of prior decisions but instead allows USCIS to consider the weight of all relevant evidence to a petition. USCIS's reliance on later evidence to find a likelihood of fraud is therefore not arbitrary and capricious on its own.

Plaintiff's second argument is that USCIS's May 17, 2022, denial of Hameed's Form I-130 petition was based on evidence that was not available in the record and that the June 11, 2025, denial relied on similar evidence that contradicted the 2022 evidence. Plaintiffs point to the BIA's remand order which concluded that remand was warranted for "further clarification of [USCIS]'s decision[,]" and that "[USCIS] should reassess the case and clarify which statements [it] relies on and when and to whom Ms. Holland's statements were made to ensure that the petitioner is provided proper notification and an opportunity to respond." D.E. 12, at 128. Specifically, the BIA was concerned that the 2022 denial referenced a police report that was not included in the record and instructed that "sworn affidavits should be considered along with other evidence of record." *Id.* Plaintiffs assert that reliance on this missing evidence was arbitrary and capricious.

But USCIS's 2025 denial removes any reference to the missing police report and instead relies on a separate investigative report from DHS Homeland Security Investigations, which describes a different conversation with Holland on April 19, 2017. That conversation highlights admissions by Holland that she was paid $150 per month three or four times in cash, and that she received $80 as part of the last payment in November 2016. Reliance on that evidence is reasonable, and USCIS does not rely on any "missing and unreviewable" evidence in the 2025 denial. Moreover, there is no requirement to discuss every piece of evidence that an agency

6

receives. *See Fosso v. Sessions*, 692 F. App'x 744, 754 (4th Cir. 2017). USCIS "acknowledges the affidavits and photographs submitted in response to the NOID." D.E. 12, at 6. However, it need not address every piece of evidence individually, especially where it does address the relevant rebuttal testimony in the affidavits. *See Mestanek*, 93 F.4th at 174. As such, the Court does not find that USCIS was arbitrary and capricious by relying on the investigative report in its 2025 holding.

Plaintiffs also assert various factual arguments, claiming that the administrative record includes contradictory or speculative facts that render the USCIS denial "internally inconsistent." *Plaintiffs' Memorandum*, D.E. 17, at 13. Among these are allegations that dollar amounts of the pay Holland received vary based on the source (Holland reportedly gave various numbers to investigators, including $150 per week, $200 per week, and $200 per month, along with planned but ultimately unpaid bulk payments of $2000 and $3000 upon Mohamed's obtaining a green card), allegations that Holland "never lived" with Mohamed but witnessed him speaking to his (then ex-) wife in Egypt for hours (suggesting they spent significant time together), allegations of domestic abuse, allegations that Mohamed's brother was involved in the scheme, and Mohamed's response to discovering Holland's infidelity. It is not this Court's mandate to weigh the truth or falsity of various stories in the factual record. Instead, this Court is tasked with determining whether the administrative agency acted within a "zone of reasonableness." *Downey*, 685 F. App'x at 189; *Mestanek*, 93 F.4th at 170. Despite Plaintiffs' protestations, USCIS's analysis of the facts falls within a zone of reasonableness. It is reasonable to conclude that, based on Holland's various statements to police and circumstantial evidence that the marriage was fraudulent (including the fact that the parties did not live together long and could not establish sufficient evidence of the commingling of finances) there was an agreement to enter into a marriage for immigration purposes. Moreover, despite Holland's declaration withdrawing her allegations of marriage fraud, USCIS was still allowed to consider the admission. *Mestanek*, 93 F.4th at 174. It is not irrational for USCIS to conclude that Holland's retraction was not credible considering the other evidence in the record. *Id.*

Considering the high level of deference shown to administrative agencies when revieing their decisions, as well as the significant circumstantial evidence and witness testimony of marriage fraud, USCIS was not arbitrary and capricious in determining that there was "substantial and probative" evidence of marriage fraud. Plaintiffs' motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

7

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (D.E. 18) and DENIES Plaintiffs' Motion for Summary Judgment (D.E. 16). Accordingly, all claims asserted by the Plaintiffs are dismissed without prejudice.

A Judgment dismissing this action will be entered contemporaneous with this order.

This the 11th day of August, 2026.

/s/ David A. Bragdon
United States District Judge

8